MARSHALL O. WILSON et al., Individually and as Executors of . and Trustees under the Will of RICHARD T. WILSON, Deceased, et al., Respondents, *v.* JAMES B. FORD et al., Appellants.

**Real property — easements — construction and effect of agreement for joint ownership and use of one lot, for an alley, by the owners of five adjacent lots — when owner of one of such lots, also the owner of a lot not covered by such agreement, cannot create an easement for such lot in said alley.**

1. It is a well-established principle of law that an easement in gross will not be presumed where it can fairly be construed to be appurtenant to land.

2. A conveyance must be construed so as to give effect to the intent of the parties manifested by the language used, subject to the further rule that when the language used is susceptible of more than one interpretation the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument.

3. An agreement was entered into in 1864 between various parties, owners either in severalty or in common of six city lots therein described and designated on the diagram in evidence as Nos. 1 to 6 inclusive, whereby they covenanted and agreed with each other and for and on behalf of the heirs and assigns of each party, that the

parties thereto and their respective heirs and assigns should forever have and enjoy the use in common *exclusive* of all other persons of lot number five for the purposes therein mentioned. The agreement thus executed was recorded as a conveyance and was effectual as a grant to establish a perpetual easement in lot number five, which attached as an appurtenance to the remaining premises specified in the agreement. Thereafter one Ford became the owner of lot number three and of one equal undivided one-third interest in the fee of lot number five, and subsequently obtained title to lot number seven also shown on the diagram, which, though adjacent to lot number five, had no right of use therein as it was not referred to in the agreement of 1864. Ford conveyed to Kissam and others lot number seven, together with one equal undivided one-third part of lot number five. Following the description of the premises of lot number five the deed contained the following language: "Reserving, however, to the said party of the first part [Ford] the right of using said alley [lot number five] in the manner provided in agreement recorded, etc. [agreement of 1864], it being the intention of parties of the first part hereto [Ford] to convey to the parties of the second part hereto all the rights, privileges and immunities contained in the agreement recorded [agreement of 1864] except as hereinbefore reserved." *Held*, that upon considering the effect of the deeds and conveyances, and the acts and conduct of the parties in connection therewith, they did not divest Ford, his heirs and assigns of the use of lot number five as appurtenant to lot number three; that the deed executed by Ford to Kissam and others did not create an easement in gross in Ford, but the use of said lot number five appurtenant to lot number three continued in Ford during his lifetime and upon his death became vested together with lot number three in his heirs; that there was no extinguishment by any act of Ford in his lifetime of his rights in lot number five under the agreement of 1864, which prevents his heirs at law, or their assigns, from asserting a right to the use of lot number five under said agreement; notwithstanding the fact that Ford owned the fee in lot number seven and an undivided one-third part in lot number five, he could not create or convey an easement in lot number five for the benefit of lot number seven for any purpose whatsoever.

*Wilson* v. *Ford*, 148 App. Div. 307, reversed.

(Argued April 3, 1913; decided June 20, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department,

entered December 19, 1911, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought to procure a determination that plaintiff's testator, and the devisees of one Thomas T. Sturgess, their heirs and assigns, are alone entitled to the use of certain premises mentioned in the complaint, and that defendants be forever enjoined from using said premises for any purpose whatsoever, or failing, that defendants be forever enjoined and restrained from using the premises for business purposes.

The material facts are as follows: Prior to 1862 Margaret Burr, Mary Burr and Sarah Burr were owners as tenants in common of land in the city of New York, lying between 40th street and 43rd street, bounded by Fifth avenue and Madison avenue. In the years 1857 and 1861 the parties named made two separate agreements, reciting that as tenants in common they were owners of the different tracts of land mentioned in each agreement, and covenanted that the same should be improved or otherwise disposed of only as sites for residences for private families, or for churches, and that all of the covenants, restrictions and agreements in said two separate instruments so made should run with the land. The two agreements thus entered into were recorded, and in after conveyances of parcels of the property were referred to, but at the time of the commencement of this action all of the property involved in this action had been released from the provisions and restrictions of the Burrs' agreements of 1857 and 1861. In referring to the conveyances of the property it will be unnecessary to call attention to the reservations made on account of the Burrs' agreements.

January 2nd, 1864, Peter H. Morss was the owner in fee simple absolute of lot No. 1, Thomas T. Sturgess was owner in fee simple absolute of lots 2 and 4, and James S. Sturgess was owner in fee simple absolute of lot No. 3; Peter H. Morss and Thomas T. Sturgess were owners as tenants in common of lot No. 6, and Peter H. Morss,

Thomas T. Sturgess and James S. Sturgess were owners as tenants in common of lot No. 5, called the "Alleway." Said lots and the dimensions thereof appear on the following diagram:

On the 2nd day of January, 1864, the parties named entered into an agreement wherein they did "mutually covenant and agree that the said Peter H. Morss *his heirs and assigns* being owners of said Lot Number One and the said Thomas T. Sturgess *his heirs and assigns* being owners of Lots Numbers Two and Four and the said James S. Sturgess *his heirs and assigns* being owners of said Lot Number Three shall *forever hereafter* have and enjoy the use in common *exclusive* of all other per-

sons of said lot Number Five as a passageway for themselves, their servants or other deputy either on foot or with horses, carriages or otherwise to and from their respective Lots aforesaid and to and from the stables built and to be built for private use on their said lots."

August 11th, 1868, one John R. Ford (defendants Fords' testator) became the owner in fee simple of lots numbers 7 and 3, and the undivided one equal third part of lot number 5, subject to the conditions and restrictions contained in the Burrs' agreements. February 26th, 1879, John R. Ford conveyed to Benjamin K. Kissam, Peter Augustus Embury and Clarence D. Embury, trustees of the estate of Augustus Embury, lot No. 7 and also one equal undivided one-third part of lot No. 5, subject to the same conditions and restrictions.

The deed from Ford to Kissam and others following the description of the one-third undivided interest in lot No. 5 contained the following language:

"Reserving, however, to the said party of the first part [Ford] the right of using said Alley [Lot No. 5] in the manner provided in agreement recorded [agreement of 1864] — it being the intention of parties of the first part thereto [Ford] to convey to the parties of the second part hereto all the rights, privileges and immunities contained in the agreement recorded [agreement of 1864] except as hereinbefore reserved."

Subsequently an action in partition was had and lot No. 7 and the one equal undivided third part of lot No. 5 was sold under the judgment in partition by one Charles A. Jackson as referee on June 28th, 1888, to John E. Ellison. The deed from the referee to Ellison described lot No. 7 and the one equal undivided one-third part of lot No. 5, and then followed the language:

"Reserving, however, to the said party of the first part the right of using the Alley in the manner provided in the agreement [agreement of 1864], it being the intention of the parties of the first part hereto to convey to the par-

ties of the second part hereto all the rights, privileges and immunities contained in an agreement recorded [agreement of 1864] except as hereinbefore reserved."

On March 1st, 1881, Melissa Clementine Wilson became the owner of Lots Nos. 1 and 6 and the undivided one-third part of Lot No. 5. John R. Ford died seized of lot No. 3 prior to January 26th, 1897.

May 3rd, 1897, John E. Ellison by deed, referring to the partition action, the interlocutory judgment therein, the sale by Jackson as referee and confirmation of same by final judgment and the conveyance by Jackson as referee to Ellison, did convey to Richard T. Wilson, who was the husband of Melissa Clementine Wilson, lot No. 7 and the one equal undivided one-third part of lot No. 5. This deed contained the following language: " and subject also to the right by that certain deed made by John R. Ford, and his wife, dated February 26th, 1879, [from Ford to Kissam] reserving to the said John R. Ford, *his heirs and assigns* of using the Alley [Lot No. 5] in said deed referred to in the manner provided in the agreement recorded [agreement of 1864] it being the intention of the parties of the first part hereto to convey to the party of the second part hereto all the rights, privileges and immunities mentioned in said agreement, recorded * * * [agreement of 1864] except as reserved as aforesaid to the said John R. Ford."

May 14th, 1897, Richard T. Wilson and wife Melissa Clementine Wilson, conveyed the same premises to one Montgomery. The deed from Wilson and wife to Montgomery described the property as lot No. 7, and after the description of the one equal undivided one-third part of lot No. 5, also conveyed, continued " subject also to the right by that certain deed made by John R. Ford and wife dated February 26th, 1879 [Ford to Kissam] reserving to the said John R. Ford *his heirs and assigns* of using the Alley [Lot No. 5] in said deed referred to in the manner provided by the agreement recorded [agree-

ment of 1864] it being the intention of the parties of the first part hereto to convey to the party of the second part hereto all the rights privileges and immunities mentioned in said agreement recorded [agreement of 1864] except as reserved aforesaid to the said John R. Ford." On the same day Montgomery conveyed the premises to Melissa Clementine Wilson under a deed containing the same language above quoted.

Melissa Clementine Wilson thereupon was the owner of lots Nos. 1 and 6 and one undivided one-third part of lot No. 5 under the deed of March 1, 1881; also of lot No. 7, and one equal undivided one-third part of lot No. 5, under the latter deed referred to, and continued the owner of said premises down to the time of her death, May 3, 1908. Mrs. Wilson left a last will and testament in which she devised her property to her husband, Richard T. Wilson, who was the original plaintiff in this action. Mr. Wilson died before the trial and his representatives were substituted as plaintiffs herein.

Under the will of John R. Ford the defendants John B. Ford, John Howard Ford and James B. Ford, as trustees, etc., succeeded to the interest of the testator, John R. Ford, in lot No. 3 and any interest which he had in lot No. 5.

In 1907, the defendants Fords gave a lease of the property, lot No. 3, to the Fleischmann Realty and Construction Company, together with the right, title and interest of the Fords in and to lot No. 5; thereafter the Fleischmann Realty and Construction Company, assigned to the defendant Five Hundred and Seven Fifth Avenue Company its rights under the lease, the first-named company having erected on lot No. 3 a twelve-story building for business purposes which occupied the whole lot.

In connection with the construction of the building by the company named, the employees of the contractors used lot No. 5 as a passageway from 43rd street to and from lot No. 3, and after the completion of the building

continued to use lot No. 5 as a passageway for the use of the tenants of the building for business purposes until it assigned the lease to Five Hundred and Seven Fifth Avenue Company. The latter-named company has occupied lot No. 3 and the building thereon for business purposes, and in connection therewith has used lot No. 5 as a passageway from 43rd street to the building for foot travel and for wagons with merchandise and other materials, etc.

The building upon lot No. 1 was a private dwelling house occupied by Richard T. Wilson until the time of his death, November 26th, 1910, subsequent to the commencement of this action; on the rear of that lot is a private stable, the entrance to the stable being from 43rd street across lot No. 6, there being no entrance from lot No. 5 to the stable.

The building on lot No. 2 was a dwelling house occupied by Thomas T. Sturgess as a residence, but for a number of years prior to the commencement of this action had been used by various tenants for business purposes. On lot No. 4 there is a building formerly used as a private stable in connection with lot No. 2, but for a number of years it has been used for business purposes. The building on lot No. 3 was used for business purposes until the block was erected, commencing in 1901; there never was a stable erected on lot No. 3. Lot No. 7 has for many years been occupied by a dwelling house for residential purposes, the westerly windows of which overlook lot No. 5.

The referee found in this case as conclusions of law that lot No. 3 had no present easement in or over lot No. 5, and defendants, whether as owners, lessees or tenants of lot No. 3, had no easement of any kind in lot No. 5. Judgment was entered upon the report of the referee, which was affirmed by the Appellate Division, and defendants appeal to this court.

13

*David B. Ogden* and *Philip S. Dean* for Fleischmann Realty and Construction Company et al., appellants.    The reservation in the deed from Ford to Kissam, taken by itself, must be construed as a reservation to Ford, his heirs and assigns. (*Shaffer* v. *Thompson*, 102 N. Y. Supp. 121; *Wood* v. *Boyd*, 145 Mass. 176; Jones on Easements, § 90; *Chappelle* v. *R. R. Co.*, 62 Conn. 203.) The practical construction of this reservation given from time to time by both Ford and his grantees is in full accord with our contention. (*Watson* v. *City of New York*, 67 App. Div. 543; 175 N. Y. 475; *Freeman* v. *Auld*, 44 N. Y. 50; *Bennett* v. *Bates*, 94 N. Y. 351; *Howard* v. *Robbins*, 170 N. Y. 498.)

*John M. Bowers* and *Middleton S. Borland* for James B. Ford et al., appellants.    The conveyance by John R. Ford of his one-third of the fee of the alley did not extinguish the easement in the alley in favor of lot No. 3. (*Schaefer* v. *Thompson*, 116 App. Div. 775.)    The parties have made a practical construction of the aforesaid reservation by Ford. (*Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Seymour* v. *Warren*, 179 N. Y. 1; *Nicoll* v. *Sands*, 131 N. Y. 19; *Freeman* v. *Auld*, 44 N. Y. 50; *Bennett* v. *Bates*, 94 N. Y. 354; *Howard* v. *Robbins*, 170 N. Y. 498; *Watson* v. *City of New York*, 67 App. Div. 573; 175 N. Y. 475.)

*John G. Milburn* for respondents.    The owners of lot No. 3 have no present easement in the alley. (*Blackmar* v. *Striker*, 124 N. Y. 120.)

HOGAN, J.    The agreement of 1864 recited the ownership by Peter H. Morss of lot number one, by Thomas T. Sturgess of lots numbers two and four, by James S. Sturgess of lot number three, the ownership in common by Peter H. Morss and Thomas T. Sturgess of lot number six, and the ownership by Peter H. Morss, Thomas

T. Sturgess and James S. Sturgess as tenants in common of lot number five. The several lots mentioned were described in the agreement by metes and bounds, and the parties thereto did covenant and agree with each other, and for and on behalf of the heirs and assigns of each party, that the parties thereto and their respective heirs and assigns should forever have and enjoy the use in common *exclusive* of all other persons of lot number five for the purposes therein mentioned. The agreement thus executed was recorded as a conveyance and was effectual as a grant to establish a perpetual easement in lot number five, which attached as an appurtenance to the remaining premises specified in the agreement.

John R. Ford became the owner of lot number three and of one equal undivided one-third interest in the fee of lot number five, formerly owned by James S. Sturgess, and subsequently obtained title to lot number seven, which, though adjacent to lot number five, had no right of use therein as it was not referred to in the agreement of 1864. February 26th, 1879, Mr. Ford conveyed to Benjamin K. Kissam, Peter Augustus Embury and Clarence D. Embury, trustees of the estate of Augustus Embury, lot number seven, together with one equal undivided one-third part of lot number five. Following the description of the premises of lot number five the deed contained the following language:

"Reserving, however, to the said party of the first part [Ford] the right of using said Alley [lot number five] in the manner provided in agreement recorded, etc. [agreement of 1864], it being the intention of parties of the first part hereto [Ford] to convey to the parties of the second part hereto all the rights, privileges and immunities contained in the agreement recorded [agreement of 1864] except as hereinbefore reserved."

The referee held that John R. Ford by the deed or conveyance of his undivided equal one-third of the fee of lot number five in 1879 extinguished the then existing ease-

ment in favor of lot number three under the agreement of 1864, excepting the *personal* right reserved to himself to use said lot number five in the manner provided in the agreement of 1864.

It is a well-established principle of law that an easement in gross will not be presumed where it can fairly be construed to be appurtenant to land. Having in mind this rule of law we pass to a consideration of the conveyance of Mr. Ford to Kissam and others in 1879, which must be construed as to give effect to the intent of the parties manifested by the language used, subject to the further rule that when the language used is susceptible of more than one interpretation the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument. (*French* v. *Carhart*, 1 N. Y. 96; *Bridger* v. *Pierson*, 45 N. Y. 601; *Blackman* v. *Striker*, 142 N. Y. 555, 563; 3 R. S. [7th ed.] title 5, section 2, now incorporated in Consolidated Laws; Real Property Law, section 240.)

Upon the argument of the appeal counsel indulged in extended discussion as to the probable intention in the mind of Mr. Ford at the time of the execution of the deed. It would not be profitable to analyse the arguments presented or to speculate as to the mental operations of Mr. Ford at that time. His intention, so far as ascertainable, should be determined from the various written instruments in connection with the acts of all the parties. In the deed from Ford to Kissam, the intention expressed by Mr. Ford was "to convey to the parties of the second part hereto all the rights, privileges and immunities contained in the agreement." The rights and privileges contained in the agreement of 1864 were the right and privilege to use lot number five as a passageway in the manner and for the purposes therein mentioned. The "immunity" in the agreement was the exclusion of all persons other than Mr. Ford, his heirs and assigns, and

the remaining parties thereto, their heirs and assigns, from the use of lot number five. The intention of Mr Ford thus expressed was an attempt upon his part to grant to lot number seven an easement in lot number five for all the purposes and with the immunity mentioned in the agreement of 1864. We fail to find language expressly or by implication indicating any intention on the part of Mr. Ford to sever and convey any interest in lot number five appurtenant to lot number three. On the contrary, there was disclosed an intention to convey a less estate than Mr. Ford had in lot number five appurtenant to lot number three for the deed contained a reservation to Mr. Ford of the right to use lot number five in the manner provided for in the agreement of 1864, which "right" was in perpetuity for Mr. Ford, his heirs and assigns, and to the exclusion of all others save the owners (their heirs and assigns) of the lots mentioned in the agreement. The reservation thus made must be construed as an exception and cannot be limited to Mr. Ford, for the use of the term "heirs" was not requisite to create or convey an estate in fee. (3 R. S. [7th ed.] page 2205, now Real Property Law, section 240.) Notwithstanding the fact that Mr. Ford owned the fee in lot number seven and an undivided one-third part in lot number five, he could not create or convey an easement in lot number five for the benefit of lot number seven for any purpose whatsoever. He was a tenant in common of lot number five and under the agreement of 1864 the use of the same was limited to the "respective lots aforesaid," i. e., the lots specified therein which did not include lot number seven.

If as owner of lot number seven he was inhibited from the use of lot number five in connection therewith, he could not confer upon another a use which he as owner did not possess and which had been granted to others under the agreement of 1864. While he might convey the one undivided one-third fee in lot number five, the right to use lot number five was then appurtenant in per-

petuity to the certain lands specifically mentioned in the agreement of 1864, and the owners of other lands, cotenants with Ford in the ownership of lot number five, could not be prejudiced by any act of Ford in an attempt to create an easement for the benefit of lot number seven in the premises held in common. (*Palmer* v. *Palmer*, 150 N. Y. 139, 149; *Crippen* v. *Morss*, 49 N. Y. 63; *Marshall* v. *Trumbull*, 28 Conn. 183.)

We are also permitted to consider the dealings and conduct of any of the parties claiming under the agreement of 1864, or under the title from Ford to Kissam. (*Watson* v. *City of New York*, 67 App. Div. 573; affd., 175 N. Y. 475.)

The deed executed by the referee in the partition action, conveying the equal undivided one-third part of lot number five, contained a reservation in identically the words contained in the deed from Mr. Ford to Kissam. Mr. Ford died prior to January 26th, 1897. Subsequently and on the 3rd day of May, 1897, lot number seven and the undivided one-third part of lot number five was conveyed by Ellison and others to Richard T. Wilson, who was the original plaintiff in this action and to whose rights the present parties plaintiffs have succeeded. In that deed, after describing lot number seven and the one equal undivided one-third part of lot number five, followed the language:

"Subject also to the right by that certain deed made by John R. Ford and wife, dated February 26th, 1879 [Ford to Kissam], reserving to the said John R. Ford, *his heirs and assigns* of using the Alley [Lot Number Five] in said deed referred to in the manner provided in the agreement recorded [agreement of 1864] it being the intention of the parties of the first part to convey to the party of the second part all the rights, privileges and immunities mentioned in said agreement [agreement of 1864] except as reserved aforesaid to the said John R. Ford."

The agreement of 1864 having been recorded was a muniment of title to the property. Mr. Wilson, the grantee, evidently had knowledge of the death of Mr. Ford when he accepted the deed which recognized the heirs of Mr. Ford as entitled to the use of lot number five, and he thereafter executed a conveyance to one Montgomery of the same premises, which deed contained practically the same language embodied in the deed from Ellison to Wilson; thereafter Mrs. Wilson received a deed of the premises from Montgomery containing a like clause, and held title under the same to the time of her death, May 3rd, 1908, when Mr. Wilson again became vested with the ownership of the property under her will. Acceptance of the deed by Mr. Wilson, and the subsequent conveyance of the property by him, expressly recognizing in the heirs of John R. Ford a right to use lot number five for the benefit of lot number three, and acceptance by Mrs. Wilson of the deed containing like recognition of the rights of the heirs of Mr. Ford was a declaration by Mr. Wilson and Mrs. Wilson that the heirs of John R. Ford had a then existing right to the use of lot number five, appurtenant to lot number three owned by them. Subsequently Mr. and Mrs. Wilson continued to recognize the interest of the heirs of John R. Ford in the use of lot number five, and it was not until the year 1908, eleven years subsequent to the death of Mr. Ford, that any protest was made by Mr. or Mrs. Wilson against the use of lot number five by the heirs of Ford, when a notice was served upon the defendant Fleischmann Realty and Construction Company, on behalf of Mrs. Wilson, claiming that the use of lot number five was unauthorized. That notice was served subsequent to the erection of a business block on the premises, which was commenced in 1907, and after the property as stated had been used for business purposes.

When Mr. Wilson purchased the property in May, 1897, he was the owner of other property bounded on lot

number five. He had knowledge of the agreement of 1864 and of any rights of lot number three in lot number five, and is presumed to have made the necessary inquiry to ascertain the existence of any prior rights or to have been guilty of a degree of negligence fatal to a plea of ignorance. (*Cambridge Valley Bank* v. *Delano*, 48 N. Y. 326; *Anderson* v. *Blood*, 152 N. Y. 285, 293; *Kingsland* v. *Fuller*, 157 N. Y. 507, 511.)

If, at the time of the acceptance and the subsequent execution of the conveyances referred to, Mr. and Mrs. Wilson did not intend to recognize an interest in the heirs of John R. Ford in lot number five appurtenant to lot number three, it was incumbent upon them respectively to have proper recitals in the deeds which they accepted and in the conveyances executed by them. Having obtained and taken title, expressly subject to the rights of John R. Ford, *his heirs and assigns*, and for years thereafter recognizing such rights, it would be unjust to permit plaintiffs to assert that Mr. Ford during his lifetime by reason of the deed executed by him to Kissam, or Mr. Ford's heirs, are estopped from claiming the right to a use of lot number five as appurtenant to lot number three. (*Freeman* v. *Auld*, 44 N. Y. 50; *Bennett* v. *Bates*, 94 N. Y. 354.) Rather should the plaintiffs, successors in title to Mr. and Mrs. Wilson, be concluded from denying the existence of such rights.

Considering the effect of the deeds and conveyances mentioned, and the acts and conduct of the parties in connection therewith, I find no difficulty in determining the intention of John R. Ford in his lifetime, and the intention of Richard T. Wilson and Melissa Clementine Wilson during their respective lives, relating to the property in question and conclude that the several conveyances upon which reliance is placed by the respondent did not divest John R. Ford, his heirs and assigns of the use of lot number five as appurtenant to lot number three; that the deed executed by Mr. Ford to Kissam and others did

not create an easement in gross in Mr. Ford, but the use of said lot number five appurtenant to lot number three continued in Mr. Ford during his lifetime and upon his death became vested together with lot number three in his heirs, the defendants Ford herein; that there was no extinguishment by any act of Mr. Ford in his lifetime of his rights in lot number five under the agreement of 1864, which prevents his heirs at law, or their assigns, from asserting a right to the use of lot number five under said agreement.

This conclusion renders a new trial necessary. We do not pass upon the remaining question decided by the referee, that the agreement of 1864 did not authorize the use of lot number five in connection with a business building. Covenants of the character contained in the agreement of 1864 have been refused enforcement in equity in certain cases where by reason of a changed condition it would be inequitable to enforce such covenants. (*People ex rel. Frost* v. *N. Y. C. & H. R. R. R. Co.,* 168 N. Y. 187; *McClure* v. *Leaycraft,* 183 N. Y. 36.) Upon another trial of the action evidence bearing upon that question together with the legal effect to be attached to the release executed by Mrs. Wilson and the language of the agreement upon that subject will be presented for consideration of the court.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., WILLARD BARTLETT and CUDDEBACK, JJ., concur; HISCOCK and CHASE, JJ., dissent; MILLER, J., not sitting.

Judgment reversed, etc.