ATLANTIC MILLS OF RHODE ISLAND, Appellant, *v.* THE NEW YORK
CENTRAL RAILROAD COMPANY, Respondent.

Third Department, July 1, 1927.

Easements — right of way for railroad tracks — action to restrain use of
right of way and for damages — right of way was appurtenant to certain
dock property and was not assignable easement in gross — right of
way was lost by abandonment — plaintiff not barred by laches.

This is an action to restrain the defendant from using a railroad right of way
over the property of the plaintiff, and to recover damages because of its use.
It appears that in 1869 the Hudson Iron Company owned land bordering the
Hudson river near Hudson, N. Y., across which ran the railroad tracks of the
defendant's predecessor, the Hudson River Railroad Company. The Hudson
Iron Company conveyed to the Delaware and Hudson Canal Company a part
of the land known as the dock property, which was located west of the Hudson
River Railroad Company's tracks, and granted a right of way for the construction
of two rail tracks across the land, lying to the east of the Hudson River Railroad
Company's tracks, for the purpose of connecting with the Boston and Albany
railroad. Said easement was granted to the Delaware and Hudson Canal Com-
pany for use for the purposes of its business, which was, at that time, the trans-
portation of coal, and gave to the grantor certain rights in the use of the tracks
to be constructed. The dock property was subsequently conveyed and after a
number of intervening ownerships by private individuals came into the posses-
sion of the present owner, a corporation. No use was made of the right of way
until 1910, when the owner constructed a single track across the land lying to
the east of the Hudson River Railroad Company's tracks. The plaintiff, which
succeeded to the rights of the Hudson Iron Company, as owner of part of the
property crossed by the right of way, protested against the construction of said
track in 1910. Said track was thereafter leased to the defendant, and is being
used by the defendant for general railroad purposes and not as an appurtenant
to the dock property. Said right of way was appurtenant to the dock property
and cannot be severed therefrom and cannot be separately assigned.

Taking all the attending facts into consideration, the easement was not one in
gross that could be assigned, and, therefore, the defendant does not have the
right to exercise the easement for general railroad purposes under its lease from
the owner of the dock property.

Furthermore, the right of way, which was not used between 1869 and 1910, was
lost by abandonment, and its use after 1910 did not restore the title which had
previously been lost.

The plaintiff has not, because of delay in bringing this action, lost its right to
equitable relief, especially in view of the fact that the defendant has made no
expenditure on the faith of its lease from the owner of the dock property, but,
on the contrary, has had the benefit thereof without prejudice, and moreover
has carefully protected itself in the lease against litigation which it evidently
expected.

APPEAL by the plaintiff, Atlantic Mills of Rhode Island, from a
judgment of the Supreme Court in favor of the defendant, entered
in the office of the clerk of the county of Columbia on the 16th day

of March, 1926, upon the decision of the court rendered after a trial at the Columbia Trial Term, a jury having been waived.

*John V. Whitbeck, Jr.,* for the appellant.

*Chadbourne, Stanchfield & Levy* [*William V. Saxe* of counsel], for the respondent.

COCHRANE, P. J. Plaintiff seeks in this action an injunction against the defendant restraining it from using a railroad right of way over the property of the plaintiff and for damages because of such use. It is stipulated that such damages are $1,000 in case plaintiff obtains an injunction for the full relief demanded in the complaint.

In the year 1869 the Hudson Iron Company, being the owner of a considerable tract of land in the city of Hudson, conveyed a portion thereof in fee to the " President, Managers and Company of the Delaware and Hudson Canal Company." The portion thus conveyed was bounded on the west by the Hudson river extending 630 feet along the river, and was bounded on the east by lands of the Hudson River Railroad Company, predecessor in interest of the defendant herein. This portion is known and referred to as the dock property. Following a description of said dock property in the said deed of conveyance there was also conveyed a right of way in the following language: "And also a right of way for two rail tracks not exceeding Thirty Three (33) feet in width in all, across said Hudson Iron Company's lands for rail tracks to form connections with the Hudson and Boston Rail Road and crossing the Hudson River Rail Road at a point Southerly not less than five hundred and seventy-five (575) feet from the center of the present main track of the Hudson and Boston Rail Road where it crosses the Hudson River Rail Road track, subject to the covenants and agreements hereinafter contained." As appears from the record and as may be inferred from the above description the tracks of the Hudson and Boston railroad crossed the tracks of the Hudson River railroad and such crossing still continues. The said deed further provided that the canal company might take from the furnaces of the iron company certain cinders for the purpose of filling in the premises conveyed and the land to be used for the railroad tracks above mentioned. The said deed also contained the following provision: " The said party of the first part [Hudson Iron Company], its grantees, successors and assigns, shall have the full right, and free right, to connect by switches, and to use for the purposes of its and their business the main rail tracks so to be laid across and over the lands of the party of the first part above mentioned, and to pass cars thereon for the purposes aforesaid, but such cars and right of trackage shall at all times be under

the supervision of the superintendent of the party of the second part and shall be subject to the same conditions as may be in use for the time then being in passing over the coal of the said party of the second part; it being hereby declared to be the intention of the parties hereto that the said party of the first part, its grantees, successors and assigns shall have free use and right, of passing cars over the said main tracks at all reasonable times, but not for the standing of cars on such tracks, nor for the transportation of coal over the same except such coal as shall have been purchased for the purposes of the business of the party of the first part under its present Certificate of Incorporation and during the renewals thereof, and then only for the same business as is now carried on under its present certificate; and that the party of the first part shall at its own expense furnish all such branch room as may be required for the standing of their cars loaded or empty."

For some undisclosed reason no tracks were placed on said right of way and no use was made thereof until the year 1910 under circumstances hereinafter described. In the year 1895 the canal company conveyed the dock property and in form the right of way to Frederick W. Jones. After a number of intervening ownerships, all by private individuals, the property and in form the right of way was in the year 1909 conveyed to the Knickerbocker Portland Cement Company. That company in the following year constructed a single rail track on the right of way not from the dock property but from " the east right of way line of the New York Central & Hudson River Railroad Company " to what was formerly the Hudson and Boston railroad being a distance of 1,175 feet. No purpose is apparent why this construction should have been made by the cement company unless it was in view of a lease which was made the following year by said cement company to the defendant of so much of said right of way with the rail construction thereon as extended easterly of " the east right of way line " of the defendant. With the progress of the years the Hudson and Boston railroad had become part of the Boston and Albany Railroad Company and had been absorbed by the defendant into its railroad system. Thus by the method above described the defendant claims to have acquired an additional connection between its main line of tracks and its tracks which in the year 1869 belonged to the Hudson and Boston railroad. The plaintiff which had succeeded to the rights of the Hudson Iron Company as the owner of part of the property crossed by the right of way, seasonably protested against the construction of said track while the same was being constructed in the year 1910. The cement company remains the owner of the dock property. As appears from the foregoing state-

ment of facts the right of way has been severed from the dock property and is being used independently by the defendant for its general railroad purposes under the aforesaid lease from the cement company.

The plaintiff contends that the right of way was appurtenant to the dock property as dominant tenement and that it cannot be used for any purpose unconnected with that property, invoking a familiar rule of law as stated in *United States Pipe Line Co.* v. *Delaware, Lackawanna & Western Railroad Co.* (62 N. J. Law, 254, 281) as follows: "A right of way appurtenant to a dominant tenement can be used only for the purpose of passing to or from that tenement. It cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of the dominant tenement, neither can it be assigned by him to a stranger, and so be made a right in gross, nor can he license a stranger to use the way when he is not coming to or from the dominant tenement. Godd. Easem. 321, 329; Washb. Easem. 254, 256. The cases to this effect are numerous."

The defendant on the other hand contends and so it was held by the trial court that the right of way constituted an easement in gross or one distinct from any ownership of lands or dominant tenement. Such an easement is as a rule not assignable but is personal to the grantee. (*Saratoga State Waters Corporation* v. *Pratt*, 227 N. Y. 429, 443.) It has also been held herein that such easement in gross constitutes an exception to the general rule in that it is not only severable from the dock property but that it is also assignable.

In *Wilson* v. *Ford* (209 N. Y. 186, 196) it is said: " It is a well-established principle of law that an easement in gross will not be presumed where it can fairly be construed to be appurtenant to land." Having in mind this rule and confining ourselves to a perusal of the deed of 1869 exclusive of extraneous circumstances there can be no doubt that the plaintiff's contention should be upheld for there is nothing in the deed suggestive of the idea that an easement in gross was intended rather than an easement appurtenant to the land conveyed.

We shall assume, however, for the purposes of this discussion that as claimed by the defendant the right of way is severable from the dock property and is transferable or in other words that it constitutes an easement in gross and not only that but also one of the exceptional easements in gross which is assignable. In making that contention the defendant necessarily of course takes into consideration facts and circumstances existing independently of the deed. The intent of the parties in creating the right of way *as to the nature of its use* then becomes the determining factor in the case.

In ascertaining such intent regard may be had not only to the language of the grant conveying such right of way but any circumstances surrounding the grant which had a proper tendency to show such intent. (*Wilson* v. *Ford,* 209 N. Y. 186, 196; *Herman* v. *Roberts,* 119 id. 37, 42, 43; *Bakeman* v. *Talbot,* 31 id. 366, 368, 370; *Mayor, etc., of New York* v. *Law,* 125 id. 380, 392; *French* v. *Carhart,* 1 id. 96, 102; *Bridger* v. *Pierson,* 45 id. 601; *Blackman* v. *Striker,* 142 id. 555, 560.)

In not confining itself to the deed but in construing the same in the light of existing circumstances the defendant contends that the corporate powers and duties of the canal company constituted an important consideration as bearing on the intent of the parties. The court at Trial Term gave great weight to this feature of the case and held that the canal company had the general powers and rights of a railroad corporation under chapter 841 of the Laws of 1867. It may be that in granting a right of way to a railroad corporation the contracting parties contemplate the possibility of future mergers, consolidations or other developments due to expanding business or otherwise. Such, however, is not this case. The canal company was not a railroad corporation. The Delaware and Hudson Canal Company was incorporated by chapter 238 of the Laws of 1823 for the purpose of building a canal and by means thereof of transporting to different parts of the State coal from the mines in Pennsylvania. It was a common carrier of coal. It is true that by chapter 841 of the Laws of 1867 broad and general railroad powers were conferred upon the canal company *but only as incidental to its business of transporting coal.* The statute itself recites that those powers were conferred " for the purpose of increasing said supply of coal." Any railroad construction or maintenance authorized by the act was clearly indicated in the statute as being incidental or subsidiary to that purpose. The facilitation of coal transportation alone was the purpose of the act. Eliminate that purpose and no vitality was left in the statute. The canal company being thus authorized by statute to construct and operate railroads for the sole purpose of coal transportation it will be assumed that the right of way was acquired by it for that sole purpose. (*Yates* v. *Van De Bogert,* 56 N. Y. 526.) The parties to the deed of 1869 must be deemed to have contracted with that in view. The dominant purpose in the minds of the parties was the passage of coal not generally but from the river at the location of the dock property. The indubitable purpose of this right of way was to gain access to the river so as to facilitate the transportation of coal from the Pennsylvania mines to places east of the river. There is nothing in the circumstances to indicate any different

purpose.  There is no evidence justifying an inference that the canal company ever contemplated the acquisition or operation of a railroad in the vicinity in question except over this right of way in order to effect an easy transfer of its cargoes of coal from its boats to cars operated over the Hudson and Boston railroad.  The right of way was not contemplated to serve any purpose except to receive coal at the dock property on the river and to permit it to be transferred from that point.  We think it is a fair inference that the dock property and the right of way were to be used as a single entity for that and for no other purpose.  The reasoning would be the same, however, if the dock property had not been conveyed but instead thereof the right of way had extended from the edge of the river.  Appropriating from said chapter 841 of the Laws of 1867 its language expressive of its purpose, the effect of the contract between the parties was as if they had said, The Delaware and Hudson Canal Company, a corporation engaged in the business of transporting coal, may " for the purpose of increasing said supply of coal " to places east of the Hudson river transfer its cargoes of coal from its canal boats to cars which may be operated from said river at the location of the dock property to the Hudson and Boston railroad.  The canal company being a carrier of coal had no right to transport other freight or passengers unless such activity might be considered as essential to " increasing said supply of coal."  This was the situation surrounding the parties and it was with reference thereto that the right of way was granted. Certainly it could not reasonably have occurred to the contracting parties that part of this right of way was to be used solely as a link in the general transportation business of a great railroad system to which the canal company as then constituted never could bear any relation unless it might be to deliver to it cargoes of coal.  The deed of 1869 itself bears evidence to the contrary. It gave the Hudson Iron Company and its successors including this plaintiff the right to connect by switches with the rail tracks on the right of way and to use such tracks for the purposes of their business whatever that business might be, the only limitation being against the transportation of coal *even for use in their own business* except that the iron company itself might transport coal purchased for its business as *carried on at the time the deed was executed,* and furthermore the said deed expressly subjected the trackage rights of the iron company and its successors " to the same conditions as may be in use *for the time then being in passing over the coal of the said party of the second part.*"  (Italics ours.)  The significance of the deed in the particulars indicated is two-fold.  *First,* it is unreasonable to assume that a private individual or corporation was to

be at liberty to interfere with the business of a large railroad system by entering and using its tracks for individual purposes, and *second,* it was clearly indicated that coal transportation by the canal company was the only thing contemplated. This right of way was not merely for the benefit of the canal company but also for the benefit of the iron company and its successors and assigns. The owners of the servient tenement had a right to use the tracks. If the servient tenement became subdivided into different ownerships as has actually occurred all these separate owners have acquired the right to use the rail tracks for the purposes of their business. In other words, the various owners of the servient tenement are also owners with the defendant of the right of way. It would seem that such a situation is inconsistent with a right of way for general railroad purposes. Each owner of the right of way and each owner of the servient tenement would tend to seriously disturb if not to destroy the business of the other owners. It is our conclusion, therefore, that the use of the right of way by the defendant whether considered as an easement appurtenant to the dock property or as an easement in gross is unauthorized.

We also think that the right of way was lost by abandonment. In considering this feature of the case it must not be overlooked that the owners of the servient tenement were entitled to the use of the railroad to be constructed on the right of way. Their rights have been affected by the failure of the canal company and its successors to build the railroad. The question must be considered from the standpoint of both parties. In *Snell* v. *Levitt* (110 N. Y. 595, 602) it was said: " Non-user for a period of twenty years, under such circumstances as show an intention to abandon and give up the easement, is sufficient to extinguish it; and even an abandonment for a shorter period, under such circumstances as show an intention to give up and release an easement, which is acted upon by the owner of the servient tenement so that it would work harm to him if the easement were thereafter asserted, would operate to extinguish the easement." For twenty-six years the canal company failed to build the railroad and the iron company and its successors were deprived of the use thereof. It cannot be assumed that such use was valueless. It was something for which the iron company had contracted. The canal company then conveyed the dock property and with it the purported right of way to an individual and it was held under individual ownership without any use being made thereof for another fourteen years. The purported conveyance of the right of way in connection with the dock property was without significance as bearing on the question of abandonment. The description of the property was

taken from the original deed and it was quite natural to describe the right of way in connection with the other property.    In *Snell v. Levitt* (*supra*) there had been a number of conveyances of the easement but such conveyances did not militate against the claim of abandonment which there prevailed.    Of course it is quite improbable that these individual owners contemplated the construction of a railroad.    For more than forty years after the creation of the right of way its existence was ignored by all parties.    We think there was an abandonment before the year 1910 when the first use thereof was attempted and if so such use thereafter did not restore a title previously lost by abandonment.

We do not think the plaintiff because of delay in bringing this action has lost its right to equitable relief.    The defendant has made no expenditure on the faith of its lease but on the contrary has had the benefit thereof without prejudice and moreover it carefully protected itself in the lease against anticipated litigation and its consequences.

The judgment should be reversed on the law and facts and judgment rendered in favor of the plaintiff for an injunction as demanded in the complaint, and for $1,000 damages and costs.

The court disapproves the findings of fact in the decision numbered 5, 10, 12 to 21, both inclusive, and 23, and such facts as are stated as conclusions of law and finds that the parties to the deed of 1869 intended the right of way therein described to be used by the canal company, which was a common carrier of coal, solely in connection with its business of transporting coal from the river at the dock property and did not intend such right of way to be used for other railroad purposes nor separate from the dock property and that the title to such right of way was lost by abandonment thereof prior to the year 1910.

VAN KIRK, McCANN, DAVIS and WHITMYER, JJ., concur.

Judgment reversed on the law and facts and judgment rendered in favor of the plaintiff for an injunction as demanded in the complaint, and for $1,000 damages and costs.

The court disapproves the findings of fact in the decision numbered 5, 10, 12 to 21, both inclusive, and 23, and such facts as are stated as conclusions of law and finds that the parties to the deed of 1869 intended the right of way therein described to be used by the canal company, which was a common carrier of coal, solely in connection with its business of transporting coal from the river at the dock property and did not intend such right of way to be used for other railroad purposes nor separate from the dock property and that the title to such right of way was lost by abandonment thereof prior to the year 1910.