Edward G. Baker, J.
This is an action under article 15 of the Real Property Law brought to compel the determination of a claim to real property located at South Beach, Staten Island. Plaintiff is the successor in interest to Staten Island Beach Land Improvement Company, the grantor named in a certain indenture dated May 7, 1892, in and by which there was conveyed to Staten Island Rapid Transit Railroad Company, the predecessor in interest of defendant, Staten Island Rapid Transit Railway Company, an easement of right of way in the subject premises, upon certain covenants and/or conditions hereinafter set forth at length. The action was originally commenced by Staten Island Beach Land Improvement Company which, by deed dated January 4, 1955 and duly recorded, conveyed all the right, title and interest in said premises to Beach Land Amusement Co., Inc., the plaintiff. By order dated May 16, 1955, said Beach Land Amusement Co., Inc., was substituted as plaintiff in the action in the place and stead of the original plaintiff.
Plaintiff claims that, in violation of the terms and conditions of the 1892 grant, defendant, on and after April 1, 1953 ceased to maintain a depot or station at Sand Lane, and ceased permanently to operate its railroad over the subject premises, by reason of which defendant’s easement has terminated. Plaintiff seeks judgment (a) that defendants be barred from all claim to an estate or interest in the premises, (b) that the easement be declared terminated, (c) that it be adjudged and determined that plaintiff is vested with an absolute and unencumbered title *737 in fee to the premises, (d) awarding possession to plaintiff, (e) damages for withholding possession from plaintiff since April 1, 1953.
Defendant railway asserts that prior to April 1, 1953 it did operate, and since that date has continued to operate its railroad over said premises; and did, and has continued to maintain a depot and freight station at South Beach; and that its easement for railroad purposes continues unimpaired. Said defendant also questions the validity of plaintiff’s title and its right to enforce the terms and conditions of the grant; and further maintains that the court lacks jurisdiction to enter any judgment ousting it from possession of the premises.
The grant and the terms and conditions thereof, so far as here relevant, are as follows:
That the said party of the first part for and in consideration of the sum of one dollar lawful money of the United States to it duly paid by the said party of the second part at, or before, the ensealing and delivery of these presents, the receipt of which is hereby acknowledged, and of other good and valuable considerations moving from said party of the second part to said party of the first part, doth hereby bargain, sell, grant and convey unto said party of the second part, its successors and assigns, the easement of a right of way for its railway track and roadway, station house, switches and turnouts, and the proper appendages thereof * *
And the said party of the second part hereby covenants and agrees to locate and maintain and continue for all time hereafter so long as the party of second part shall occupy said premises, a depot located so as to have its exit on said part of Sand Lane hereinbefore described, and to have its entrance along the line of five hundred feet on the southerly side of said premises at Sand Lane. * that the party of the first part agrees to leave open a plot or tract of land directly south of the above mentioned five hundred foot line and being fifty feet in width running north and south and five hundred feet in length so as to connect with Sand Lane as laid down in said map. * “ *
To have and to hold the said rights and easement unto said party of the second part, its successors and assigns, so long as the same shall be used for the purposes aforesaid but no longer.
Provided, and these presents are upon the express condition, that the said party of the second part shall construct a double track railroad and put in operation on or before the first day of May 1893 on the premises above described to a station to be located and built on said Sand Lane, said railroad being an extension of the existing railroad of the party of the second part from Richmond Avenue and on the further condition that said party of the second part shall operate and continue to operate its South Beach trains over said extension to said new station on said premises; and in ease said conditions or any of them shall not be performed and complied with by said party of the second part according to the intent thereof on or before said first day of May 1893, then the grant hereby made and all the provisions of this instrument on the part of said party of the first part made thenceforth shall be null and void and of no effect, and the grant hereby made shall revert to said party of the first part, and said party of the first part shall hold and enjoy said premises as if this instrument had not been executed.
*738 And the party of the second part in consideration of the premises and of one dollar to it duly paid by said party of the first part hereby covenants and agrees to and with said party of the first part, * * * also that when or in ease said party of the second part shall at any time cease permanently to operate its railroad over said premises or shall abandon the same, that then its right to use and possess said easement and said premises shall thereupon cease and determine, and said land easement shall revert to said party of the first part; and also that said party of the second part shall and will keep and perform all the conditions and agreements on its part by this instrument to be kept and performed, * * • and in case of the failure of said party of the second part to perform any of the agreements herein contained on its part to be performed the said party of the first part shall be entitled as matter of right, from any court having jurisdiction, to a perpetual injunction restraining said party of the second part from the use and possession of said premises, or any part thereof.
It will be seen that the terms and conditions of the grant, quoted above, are somewhat lacking in precision of language. However, it seems clear that the parties intended that the grantee’s right to the use and possession of the land described was to subsist only so long as it continued to operate its railroad to and from South Beach. The right to possession was to revert if and when the use for which the easement was granted should be abandoned. It is not seriously contended that the intent was otherwise. Defendant’s position is that there has been no abandonment of the purpose for which the grant was made.
If the instrument itself lacks clarity as to what was intended, resort may be had to ' ‘ the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument ” (Wilson v. Ford, 209 N. Y. 186, 196; Strough v. Conley, 164 Misc. 248, 254 affd. 257 App. Div. 1057). The railroad to be constructed and put in operation over the premises burdened by the easement was to be ' ' an extension of the existing railroad ” of the grantee. There was to be erected, ' ' maintained and continued ’ ’ a depot or station " located so as to have its exit on ” Sand Lane. The grantee was to " operate and continue to operate its South Beach trains over said extension to said new station ”. Upon cessation or abandonment of operations, the possession of the land was to revert.
The " existing railroad ’ ’ of the grantee was one for the carriage of both passengers and freight. There can be no doubt, however, that what the parties contemplated was the establishment and continuance of passenger service to and from the station to be constructed at the specified location. The depot or station later erected pursuant to the conditions of the grant was one for the accommodation of passengers, It had its exit *739 on Sand Lane which the grantor agreed to, and did, extend and keep open so as to afford access to the Boulevard to the South and to the beach. The reference in the indenture to the “ South Beach trains ” of the grantee which were to be operated to the ‘ ‘ new station ’ ’ obviously was a reference to passenger trains. The corporate purpose of the grantor was the ‘ ‘ purchasing, owning and improving beach and meadow lands on and adjacent to the South Beach ” (see Atlantic Mills of R. I. v. New York Central R. R. Co., 221 App. Div. 386, affd. 248 N. Y. 535 where the corporate purpose of a party was considered in ascertaining intent). It is common knowledge, and the court judicially notices the fact, that the development and improvement thereafter undertaken was residential in character. That area of South Beach adjacent to the land described in the indenture was then in process of development, and continued to develop as an amusement and beach colony area. It is clear that the grantor’s purpose in conveying the easement was to secure for the land remaining in its ownership, or which it might thereafter acquire, the benefit obviously to be obtained by the establishment and continuance of regular passenger service to and from the area.
That this was also the intent and understanding of the grantee is made plain by the nature of the operation which it thereafter commenced (see Blackman v. Striker, 142 N. Y. 555, 563, where the conduct of the parties after the execution of the deed was considered in determining intent), and which it and its successors, defendant railway, continued until April 1, 1953. Until that date, regular passenger service was maintained to and from South Beach. The evidence is clear that this was the type of service contemplated by the parties to the indenture. That its abandonment would constitute a breach of the conditions of the grant was, unquestionably, their intent.
On or about June 2,1952 defendant railway filed with the Public Service Commission its petition for the discontinuance of all passenger service on its Staten Island lines. By order of the commission dated December 18, 1952 said defendant was given leave to discontinue after March 31, 1953 all passenger service and passenger trains on its North Shore and East Shore subdivisions. The premises which are the subject of this action are located at the extreme end of defendant’s East Shore line.
On April 1, 1953 all passenger service on said line was discontinued. That the discontinuance had finality is evidenced by the fact that, subsequently, the third rail which supplied power for the line, the switch house, the controls for switch operation and the signal masts were removed; barricades, in *740 the form of railroad ties were placed across the tracks to the east of Sand Lane; at the Sand Lane crossing, the tracks were filled with asphalt so that the flange of the train wheels no longer could be accommodated; the crossing gates were removed. In the fall of 1953, on petition of said defendant, an order was granted by the Public Service Commission granting leave for the discontinuance of all passenger stations on the line. Subsequently, the South Beach station was razed and removed. After April, 1953 no gateman was stationed at the Sand Lane crossing. All evidence compels the conclusion that the abandonment of passenger service on the line was complete and final. Defendant railway does not suggest that it was otherwise.
It is contended, however, that defendant operates and continues to operate its line of railroad for freight service, in interstate and intrastate commerce, on and over the subject premises to a depot at South Beach, and that the conditions of the grant thus are satisfied.
It is difficult to believe that defendant seriously contends that it continues to maintain a depot or station at South Beach within the meaning and intent of that condition of the indenture. The “ depot ” or station allegedly still maintained is an abandoned gateman’s shanty without floor, doors or windows. There is no depot now, and there has been none since 1953 when the station was razed following the order of the Public Service Commission. Nor is there any support in the proof for the claim that defendant has operated and continues to operate its railroad for the carriage of freight to and from South Beach. The case is devoid of evidence of any freight delivery to, or freight pick-up at that place during the entire 64 years of defendant’s possession, except that, during the year 1937, materials for the construction of the Roosevelt boardwalk were delivered there, and, during the year 1955, long after the commencement of this action, several deliveries of carload lots allegedly were made. There is not now and there never has been any freight service to or from South Beach, and it is clear that that kind of service was not within the contemplation of the parties when their agreement was concluded. There is proof in the case ample to support this conclusion. Three witnesses testified to requests, made in five specific instances, for the delivery of freight shipments to South Beach. In each instance, the consignees were told by defendant’s authorized agent that there was no freight delivery to South Beach; and in each, delivery was actually made at other stations on the line. There is additional and more significant evidence on the point. Defendant is a participating carrier in certain tariffs filed pursuant to law *741 with the Interstate Commerce Commission and/or the Public Service Commission. These tariffs name South Beach as a station of origin or a station of identification. In various of the supplements to these tariffs dated and filed prior to the commencement of this action, there appears the statement “ no facilities for handling freight at South Beach.” After the commencement of the action, amendments to these supplements were filed indicating that freight in carload lots would be handled at that station. The inference that defendant’s purpose in effecting the amendments was self-serving surely is not unwarranted.
Assuming, arguendo, that there has been such service, however sporadic and inconsequential, it seems clear that its continuance, alone, would not constitute compliance with the conditions of the grant. If it be said that the indenture was intended to and did encompass freight as well as passenger service, surely it cannot fairly be contended that the latter, in the minds of the parties, was not of equal or of paramount importance. The discontinuance or abandonment of passenger service was a breach of the condition, whether or not freight service was planned or contemplated, or was, in fact, thereafter established.
It is unnecessary here to determine whether the estate created was one on conditional limitation or one on conditions subsequent. If the former, defendant’s right to possession terminated upon abandonment of the use intended; if the latter, such abandonment vested in the grantor the right of re-entry, and the right was sufficiently exercised by the commencement of this action.
Whatever rights or remedies the grantor had, by reason of cessation of the use, or breach of the condition followed by commencement of the action, became vested in the plaintiff by the conveyance dated January 4,1955. The grantor, a West Virginia corporation, had been dissolved prior to the commencement of the action and the aforesaid transfer of its rights. However, after formal dissolution, it continued to exist for the purpose of winding up its affairs, and was empowered by law of the State of its creation to commence this action, and to transfer its rights therein and to the premises affected thereby (Michie’s West Virginia Code, Annotated, 1955, ch. 31, art. 1, § 3095). There was compliance with the provisions of the statute. Plaintiff’s title has been sufficiently established.
Defendant challenges the jurisdiction of the court to grant the relief demanded in the complaint. The challenge is based upon the claim that it has operated and continues to operate freight service, in interstate commerce, to and from South *742 Beach, and is, therefore, subject to the provisions of Part I of the Interstate Commerce Act; that the judgment sought would result in the compulsory cessation of freight service on part of its line, and thus would constitute interference with the lawful functions of the Interstate Commerce Commission. Subdivision (18) of section 1 of the act (U. S. Code, tit. 49, § 1, subd. [18]) provides, in substance, that no carrier by railroad subject to the act may abandon all or any portion of its line, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the public convenience and necessity permit of such abandonment.
The vacuity of the claim of operation of freight service at and over the subject premises already has been shown. But again assuming, arguendo, the fact of such service, it does not follow that the judgment sought, if granted, would necessarily result in the cessation or abandonment of operations over that part of defendant’s line. To assure the right to possession and the continuance of operation, defendant may exercise the power conferred by section 17 of the- Railroad Law. It may acquire the land or the necessary easement therein by condemnation, thus assuring to the owner just compensation for the loss of the right which accrued upon breach of the conditions under which the property was held. Defendant in effect pleads that it may, by reason of the statute (Interstate Commerce Act, § 1, subd. [18]), retain the benefits of the grant notwithstanding the willful violation of its obligation thereunder, and thus deprive plaintiff of its property without just compensation. The statute may not be so construed as to accomplish a result so manifestly inequitable and so plainly at variance with plaintiff’s constitutional rights. If, by the mandate of the statute, defendant must continue to operate its railroad over the premises involved herein until relieved of the duty by the commission’s order, it may do so by the simple expedient of exercising the right of eminent domain.
Neither Smith v. Hoboken R. R. Co. (328 U. S. 123) nor Thompson v. Texas Mexican Ry. Co. (328 U. S. 134) cited by defendant, supports the argument that, in a situation such as is presented in the case at bar, the court is powerless to grant the relief sought. Each of these cases involved the powers and functions of the Interstate Commerce Commission in reorganization proceedings under section 77 of the Bankruptcy Act (U. S. Code, tit. 11, § 205). In Smith the question presented was whether enforcement of the forfeiture clause in the lease, which covered property constituting the major part of petitioner’s right of way, would be consistent with the provisions of *743 section 77 within the meaning of subdivision (1) of section 77, and whether the public interest required that the line be operated by the lessee rather than the lessor. The court held that these were questions primarily for consideration and determination by the Interstate Commerce Commission and that the reorganization court should not have declared a forfeiture until the questions had been passed upon by the commission. The court also noted that the preparation or formulation of a plan of reorganisation of the debtor company was, under the statute, the function of the commission, and stated, inter alia,' ‘ Whether a leased line should continue to be operated by the lessee or should revert to the system of the lessor may present large questions bearing on the development by the Commission of an adequate transportation system. * * * Moreover, it appears in the present case that forfeiture of the lease will deprive the debtor of all of its railroad properties. WThether a particulai carrier should go out of business presents problems of primary importance to its security holders and perhaps to the public interest as well. If forfeiture of the lease is now declared, no plan of reorganization may be possible ” (pp. 131-132; emphasis supplied).
Similarly in Thompson, it was held that the adjudication by the lower court that the contract (for trackage rights over the line of another railroad) was terminated was premature, since the adjudication was made prior to a determination by the Interstate Commerce Commission that that step was consistent with the reorganisation requirements of the debtor. The court said (p. 143): “ We think like reasons make it important that the status quo of this trackage agreement be maintained pending decision by the Commission as to the proper treatment of it in the reorganization plan.” True, the court further held that subdivision (18) of section 1 of the Interstate Commerce Act embraces operations under trackage contracts, as well as other types of operations, and, though the contract were terminated pursuant to its terms, a certificate of the commission permitting abandonment of that part of petitioner’s operations affected by the trackage agreement nevertheless would be required. It was pointed out, however, that, upon the failure or refusal of petitioner or its trustee to make application to the commission for abandonment of operations, such application might be made by the carrier whose line was burdened by the agreement (p. 145). It would have standing to invoke subdivision (18) of ■ section 1 for the reason, as the court stated, that “ The Commission is as much concerned with its financial condition as it is with that of Brownsville ” (petitioner). Plaintiff in the case at bar has no such standing.
*744 In both the Smith and Thompson cases, a declaration of forfeiture necessarily would have resulted in cessation of operations over that part of petitioners’ lines affected by the lease in the one ease and by the contract in the other. As has been heretofore pointed out, no such result need follow a judgment for the plaintiff in the case at bar. Here defendant’s operation, if indeed there is one, may be continued. Defendant, if the public need requires, may acquire, by appropriate procedure, an easement in the land.
Accordingly, judgment is directed for plaintiff as follows:
1. That the defendants, The Staten Island Rapid Transit Railway Company and Consolidated Edison Company of New York, Inc., and each and every person claiming by, through or under them or either of them, be barred from all claim to an estate or interest in the property described in the complaint;
2. That the easement of right of way and all and any other right, title and interest granted or conveyed to the defendant, The Staten Island Rapid Transit Railway Company, by the predecessor of plaintiff by an instrument dated May 7,1892, and recorded in the Richmond County Clerk’s Office on May 12, 1892 in Liber 220 of Deeds at page 111, be declared to have terminated, ceased and determined.
3. That plaintiff is vested with an absolute and unencumbered title in fee to the property described in the complaint;
4. That possession of the said premises described in the complaint be awarded to the plaintiff and that the plaintiff be put in possession thereof, and that the defendant, The Staten Island Rapid Transit Railway Company, and each and every person claiming by, through or under it, being in possession thereof or any part thereof at the time of rendering judgment herein be removed from possession;
5. That defendants and each of them be restrained and enjoined from the use or possession of the said premises or any part thereof.
Settle judgment on notice.
(Amended decision.)
In the original decision herein the court inadvertently omitted to dispose of plaintiff’s claim for money damages. Said decision, dated April 24, 1956, is therefore amended by adding the following paragraph: “ Plaintiff has failed to prove any actual monetary damage, and is therefore awarded six cents nominal damages.”
Settle judgment in accordance with decision as amended.