G. Robert Wither, J.
It appears that plaintiffs’ predecessors in title owned a 250-acre farm (known as the Shekell farm) located in the Town of Hopewell, Ontario Bounty, north of a farm (known as the Buchan farm) purchased prior to the year 1900 by the defendant Village of Clifton Springs, and that upon the latter farm were situated several springs which constituted the source and headwaters of a stream of water which flowed northerly through the ¡Shekell farm and other adjoining farms. The village acquired the Buchan farm for the purpose of creating a water system for its residents, and it impounded most of the waters therefrom in a basin from which it piped the water to the village limits for storage in a reservoir and for distribution to the village consumers. As a result of these operations and diversion of water many owners of land north of the Buchan farm brought suit to enjoin such action by the village or otherwise made claim against the village for diversion of the water from the stream which had formerly run abundantly through their farms. The village entered into settlement contracts or release arrangements with many such owners, including plaintiffs’ predecessors in title. With respect to the latter, on September 6, 1902 the village executed an agreement to furnish the necessary pipes and water tanks and fixtures and erect the same on the ¡Shekell farm, in two barnyards thereon, one tank in each barnyard, and when completely installed and the trenches for the pipes refilled, to turn the same over to plaintiffs’ predecessors in title “ in perfectly completed condition * * * to the end that said farm and premises * * * shall be supplied at all times with a * * * sufficient supply of water for the farm stock, sheep and cattle, used, grown, or kept on the same.”
In accordance with the agreement the defendant village promptly erected and installed said tanks and pipes and thereafter supplied water thereto free of charge until December 7, 1964 when it shut off the water to plaintiffs, subject to plaintiffs’ agreeing to pay for future water service. This led the plaintiffs to bring suit against the defendant for declaratory judgment of *234 the rights of the parties under the agreement. That action is still pending, but the parties have agreed to hold it in abeyance while they seek a determination by this court of their rights, except for damages, upon a submission of the case upon agreed facts under CPLR 3222.
The plaintiffs contend that under the agreement of 1902 defendant must supply water to their farm for the stock thereon without charge so long as defendant continues to take water from its springs on the Buchan farm, which, practically, means so long as there is sufficient water from said springs to supply a substantial quantity of water in excess of that needed for stock on plaintiffs’ farm. It is not claimed that plaintiffs seek to use more water than was contemplated in the agreement.
Defendant asserts that (1) the rights of plaintiffs’ predecessors to water from the Buchan farm springs were condemned ■by the defendant by the filing of maps in 1896 and 1901 in Ontario County Clerk’s office, which proceedings included the water rights claimed by plaintiffs’ predecessors in 1902, that hence the latter’s only remedy then was to seek compensation under the Condemnation Law, and that there was no basis for them to make claim against the defendant in 1902 nor for the defendant to enter into said agreement of September 6,1902, and that it is, therefore, invalid; (2) its agreement with plaintiffs’ predecessors in title, fairly interpreted, required it only to install the water tanks and pipes thereto on the Shekell farm and make water available to the farm at a reasonable rate, since no specific provision is contained in the agreement that the water .should be supplied to the farm free of charge; (3) its agreement did not specify a particular period of time during which water should be supplied to the Shekell farm, and hence only a reasonable time, now expired, should be deemed intended by the parties; (4) under sections 229 and 232 of the Village Law the defendant could not lawfully furnish water free of charge to plaintiffs while charging other users, and hence if the agreement is interpreted as requiring defendant to furnish to plaintiffs water free of charge, the contract is illegal and void (-5) under section 232 of the Village Law the defendant may only furnish water to persons outside the municipal limits (as plaintiffs admittedly are) insofar as the water so furnished is ‘ ‘ surplus water ”; that for many years last past the supply of water from the Buchan farm has been insufficient for defendant’s residents, and defendant buys about half of the water it needs from another source (Village of Newark); and that hence defendant has no right to furnish water to plaintiffs, and its agreement, if interpreted as requiring it to do so, is illegal and void; and (6) under section 2 of article *235 VIII of the Constitution of the State of New York the defendant has no power to contract to bind its credit for a period in excess of 40 years; and that since more than 40 years have elapsed since the agreement in question was made, defendant is no longer obligated by it.
In the 1902 agreement it is recited that plaintiffs’ predecessors in title charged the village with diverting the water, and claim to have a valid cause of action therefor against the defendant and to be entitled to enjoin the defendant from continuing such diversion; and the agreement was made in settlement of those claims and of past and future damages by reason of such diversion of the water by the defendant.
There is no doubt that relinquishment by plaintiffs’ predecessors in title of such claims constituted good consideration for the agreement made by the defendant village. The agreement is of such nature that it must be held to be not only for the benefit of the plaintiffs’ predecessors who signed it but also for all subsequent owners of the iShekell farm, that is, that it runs with the land. (Strough v. Conley, 164 Misc. 248, 254-255, affd. 257 App. Div. 1057, affd. 283 N. Y. 631; Soundview Woods v. Town of Mamaroneck, 14 Misc 2d 866, 872-873, affd. 9 A D 2d 789.) In addition, it is noted that the defendant does not disclaim liability on the ground of the general lack of authority of the original Board of Water Commissioners to act in behalf of the village; and the agreement expressly purports to bind the village. Thus, it hardly seems necessary to note that by its conduct since 1902 the defendant has ratified and is estopped to deny the agreement, insofar as it was one which it could lawfully make. (See Peterson v. The Mayor, etc. of New York, 17 N. Y. 449, 453; Robinson v. City of New York, 24 A D 2d 260, 263; Seif v. City of Long Beach, 173 Misc. 84, affd. 260 App. Div. 876; Vandeweghe v. City of New York, 150 Misc. 815, affd. 242 App. Div. 762.) Moreover, furnishing water to village residents is a proprietary as opposed to a governmental function, and with respect to its contracts made in furtherance thereof, a village is obligated just as a private corporation would be. (Lloyd v. City of New York, 5 N. Y. 369.)
Our concern, therefore, is as to the construction of the agreement and whether by virtue of a statute or the Constitution it is invalid. We shall consider defendant’s defenses in the order above listed.
(1) The statute which authorized villages to establish a water supply was originally enacted by chapter 181 of the Laws of 1875, which was amended by chapter 211 of the Laws of 1885 and by chapter 383 of the Laws of 1895. That statute as amended *236 expressly contemplated that a village could enter into a voluntary agreement with the affected owners in lieu of applying to the court in a condemnation proceeding for an appraisal and approval of the taking. So far as appears herein, the agreement in question was just such a compromise of the claim of plaintiffs’ predecessors in title. Indeed, in the absence of evidence that the defendant obtained a judgment of condemnation of the water rights in issue, the defendant would be guilty of tortious conduct toward plaintiffs’ predecessors except for the agreement of 1902 (Village of St. Johnsville v. Smith, 184 N. Y. 341); and hence there is no substance to this claim iby the defendant of the invalidity of the agreement.
(2) With respect to the contention that the parties did not expressly provide that the defendant should supply water to the Shekell farm free of charge and did not so intend, it is noted, as quoted above, that the parties agreed that the tanks and water pipes would be installed by the defendant 11 to the end that said farm * * * shall be supplied at all times with a * * * sufficient supply of water.” It was also provided that the tanks and connections should be so arranged that plaintiffs’ predecessors “ may shut off the flow of water ”, and that the latter ‘ ‘ shall at no time permit water to overflow or run to waste from either of said tanks.” If plaintiffs’ predecessors were to pay for the water, defendant would have no concern for wastage. Moreover, at no time from 1902 until December, 1964 did defendant ever charge plaintiffs or their predecessors for the water supplied. This practical construction of the ¿agreement by the parties themselves for over 60 years is an important element in determining their intention. (Atwater & Co. v. Panama R.R. Co., 255 N. Y. 496, 501; Brooklyn Public Library v. City of New York, 250 N. Y. 495, 501; Carthage Tissue Paper Mills v. Village of Carthage, 200 N. Y. 1,14; City of New York v. New York City Ry. Co., 193 N. Y. 543, 548; Matter of Erwin, 277 App. Div. 378, 384; and, see, Grimmer v. Tenement House Dept. of City of N. Y., 205 N. Y. 549 ; Matter of Henneberger, 155 N. Y. 420, 429.) It is held, therefore, that the parties intended that water be supplied to the farm free of charge. It should be noted, of course, that this is not to say that the defendant is thus bound to furnish the water without consideration. Plaintiffs’ predecessors gave defendant the consideration when they released to defendant their rights to have the normal surplus water continue to flow through their lands; and defendant’s continued use of such waters is a continuing consideration for its furnishing water to the plaintiffs.
*237 (3) The agreement specified that “ at all times ” a sufficient supply of water would be furnished to the farm. There is nothing in the agreement to suggest a limitation of time, including a reasonable time, as contended by the defendant. The fair construction of the agreement is that it is partly in the nature of a unilateral offer that so long as the defendant desires and continues to divert the water it will supply free water to the farm through said pipes and tanks. (Strough v. Conley, 164 Misc. 248, affd. 257 App. Div. 1057, affd. 283 N. Y. 631, supra; and, see, 15 Op. St. Comp., 1959, p. 313; 19 Op. St. Comp., 1.963, p. 360; and cf. Simson v. Parker, 190 N. Y. 19, 23.)
(4) (5) Section 229 of the Village Law authorizes the village to establish water rates, and section 232 thereof authorizes it to sell water to nonresidents. The last sentence of section 232 provides that “ The board shall not sell nor permit the use of water under this section if thereby the supply for the village or its inhabitants will be insufficient.” Neither of these sections, nor their predecessor sections, apply to the instant case, and they did not and do not operate to prevent the defendant from effecting the settlement of claim made herein in 1902. Plaintiff’s predecessors claimed rights to the surplus water from the Buchan farm, diminished only by the normal uses of the water on that farm. The question before the parties to the agreement was not water rates nor the sale of water to a consumer, but the continued use of the spring water by each of the parties, and the agreement effected a compromise of the conflicting claims thereto. Had plaintiffs’ predecessors been successful in a legal action on the claims in 1902, presumably defendant would have been enjoined from taking a substantial part of the water from said springs. Defendant acted to protect its right to use all of the water except that needed for the stock on the Shekell farm. If defendant made a bad bargain, it is bound by it, unless it can succeed in its contention that the contract is invalid because it violates section 2 of article VIII of the New York State Constitution, to which point we now turn.
(6) That section contains a restriction on the indebtedness which a municipality may contract, and provides in part “No indebtedness shall be contracted for longer than the period of probable usefulness of the object or purpose for which such indebtedness is to be contracted * * * and in no event for longer than forty years.” The section does not apply to this transaction. In the first place, the provision was incorporated in the State Constitution for the first time in 1938, and could not affect this pre-existing contract. Moreover, subdivision B of section 5 of said article provides for the exclusion of “ indebt *238 edness heretfore or hereafter contracted to provide for the supply of water ’ and section 8 of the article provides that no indebtedness valid when incurred shall become invalid by reason of the article. Furthermore, the only credit, if any, of the defendant which was pledged by the agreement was that required to build the two water tanks and install the iron piping, all of which was done promptly without great expense. Agreeing to permit plaintiffs’ predecessors in title to take water from the pipes for an indefinite period did not constitute a contract for an indebtedness; and indeed such a contract by a village has been held valid and enforcible. (Strough v. Conley, 283 N. Y. 631, supra.)
It is held, therefore, that the agreement of 1902 between these parties is valid, and that the defendant village must furnish water to the plaintiffs’ said farm without charge for the purposes expressed in the agreement, and in the manner therein provided.
At this time there is no indication that the defendant will abandon the Buchan farm springs as a source of its water supply, nor any indication as to whether the plaintiffs and other riparian owners of the original stream would wish to have the defendant restore the stream to its original bed in case the defendant should decide to abandon the Buchan farm wafer source. Thus, the question of the rights of the parties in such event is not before the court. (As to this question see Strough v. Conley, 164 Misc. 248, affd. 257 App. Div. 1057, affd. 283 N. Y. 631, supra, and the same case on a prior appeal, 251 App. Div. 487, including dissenting opn. pp. 488-491; and as to whether the Statute of Limitations will have run against the owners in such event, see Robinson v. City of New York, 24 A D 2d 260, supra.)